Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The Pre-Trial Agreement entered into by the parties on October 25, 1992 is incorporated herein by reference.
2. The plaintiff's average weekly wage was $363.23, which yields a weekly compensation rate of $242.17. The plaintiff was paid temporary total disability compensation from December 27, 1991 to April 6, 1992.
* * * * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission adopts the following findings of fact by the deputy commissioner:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 49 year old female who had been employed for twenty-two years with defendant as a sewer of cushions and backs for upholstered furniture.
2. In 1989, the plaintiff was diagnosed by Dr. H. Grey Winfield of Hickory Orthopedic Center as having carpal tunnel syndrome. On June 29, 1990, Dr. Winfield performed release surgery for this condition, and as of August 20, 1990, the plaintiff was released to return to work.
3. The plaintiff was offered non-production work, but elected to return to her prior job as a sewer, as she enjoyed the work.
4. The plaintiff began to experience problems with her hands, and was out of work from December 27, 1991 to April 6, 1992, for which she was paid temporary total disability compensation pursuant to the Form 21.
5. The plaintiff was referred by defendant to Dr. William M. Pekman of Hickory Orthopedic Center. On March 20, 1992, Dr. Pekman found the plaintiff to be experiencing symptoms of carpal tunnel syndrome. Dr. Pekman advised that the plaintiff could return to work on March 23, 1992 to a non-production job.
6. The plaintiff returned to work on April 7, 1992 to a job sewing welt on cushions and upholstered fabric for furniture. The duties involved placing the end of a strip of welt into a machine where it would feed into the machine to be sewn on the fabric or cushion. The plaintiff was required to hold the welt to keep it from tangling, but she was not required to pull the welt through the machine.
7. On August 4, 1992, Dr. Pekman found that plaintiff had shown improvement and was at maximum medical improvement. He further rated her as retaining a 5% permanent impairment in each hand and he opined that further surgery was not recommended.
8. On September 24, 1992, the plaintiff took a leave of absence, after being written out of work by her family doctor, Dr. Bujold.
9. From September of 1992 through February of 1993, the plaintiff sought medical treatment from her family doctor, neurosurgeon Dr. Gregory Rosenfeld, and hand surgeon Dr. E. Brown Crosby. During this time, Dr. Rosenfeld recommended surgery. Dr. Crosby diagnosed bilateral carpal tunnel syndrome, and has opined that the welt sewer job caused or aggravated the condition. Dr. Crosby recommended conservative treatment and for plaintiff to receive counseling for her severe depression which related to her hand problems.
10. Dr. Crosby placed the plaintiff out of work beginning on February 11, 1993, due to her pain and depression. Nerve studies by Dr. Crosby were all reported within normal. On March 30, 1993, the plaintiff began treatment with Walter Lawless, Ph.D., a clinical psychologist, upon referral from Dr. Crosby. Dr. Lawless found it was very likely the plaintiff's depression was secondary to her hand problems.
11. The plaintiff was offered a final inspection job which did not involve repetitive hand or wrist movements a number of times from January through May of 1993; however, the plaintiff refused this offer.
12. During this time, the plaintiff had been receiving prednisone, and had been treated for hypothyroidism and reactive airways disease. Hypothyroidism and prednisone are both known causes of carpal tunnel syndrome.
13. On June 1, 1993, the defendants referred the plaintiff to Dr. Stephen J. Naso, Jr., a specialist in hand surgery. Dr. Naso opined that the plaintiff should avoid a job which necessitated moderate to severe repetitive motion, which he defined as a job which requires a complete cycle of motion every thirty seconds or less. Dr. Naso found that the welt sewing job was not repetitive in nature. He also opined that an inspection job which consists of visual inspection of upholstered chairs, sofas, and loveseats, blowing off lint with an air gun, inspecting cushions, clipping threads, checking furniture legs and skirts, and attaching a ticket, and pushing a dolly five to ten feet was not repetitive in nature.
14. Although Dr. Crosby opined that the jobs at Broyhill were assembly line jobs which required continuous repetitive maneuvers throughout the day, this opinion is not supported by the evidence in the record. The welt sewing job and the final inspection job were not repetitive motion jobs.
15. There was no medical evidence in the record that any symptoms plaintiff had after April 7, 1992 were characteristic of and peculiar to the welt sewing job.
16. There is no credible medical evidence in the record that plaintiff was disabled from performing either the welt sewing job or final inspection job on September 24, 1992, or thereafter, or that plaintiff was justified in her refusal to cooperate with defendants efforts to find a job within her restrictions.
17. On October 18, 1993, the plaintiff accepted a modified final inspector job.
18. Dr. Crosby rated the plaintiff as having a 7 1/2% permanent impairment to her right hand and a 5% rating to her left hand.
* * * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In order to establish each and every element of an occupational disease claim, which plaintiff is contending she has the burden of proving the following:
 (a) the disease is due to causes and conditions characteristic of and peculiar to plaintiff's employment; and
 (b) the particular employment conditions must place plaintiff at a greater risk than the general public of contracting the disease. N.C.G.S § 97-53.
2. The plaintiff has failed to carry the burden of proof to establish that the exacerbation of her pre-existing carpal tunnel syndrome after April 7, 1992 was characteristic of and peculiar to her employment, or that she was at a greater risk, as required by N.C.G.S. § 97-53.
3. The plaintiff is entitled to receive permanent partial impairment compensation pursuant to N.C.G.S § 97-31 for the 5% rating to both hands, as assigned by Dr. Pekman.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to the plaintiff 20 weeks of accrued benefits at the weekly rate of $242.17, and as such compensation has accrued it shall be paid in a lump sum subject to counsel's fee hereinafter approved.
2. A reasonable attorney's fee of 25% is approved for plaintiff's counsel, and shall be deducted from the sum due plaintiff and paid directly to counsel.
3. Plaintiff's claim for additional temporary total disability benefits is hereby DENIED.
4. Each side shall bear its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ JAMES J. BOOKER COMMISSIONER
S/ __________________ NEILL FULEIHAN DEPUTY COMMISSIONER
BSB:md